J. W. PRENTISS v. EDWARD NELSON and Another.[1]

October 29, 1897.

Nos. 10,822—(41).

**Authority of Agent—Sale of Land—Ratification.**

In an action to enforce specific performance of an alleged executory contract of sale of real estate, *held*, on the evidence, the pretended agent who made the contract in the name of plaintiff had no authority to do so, and the court was warranted in finding that his unauthorized act was never ratified by defendant.

[1] Reported in 72 N. W. 831.

Action in the district court for Clay county for the specific performance of a contract for the sale of land. From an order, Baxter, J., denying plaintiff's motion for a new trial after judgment had been ordered for defendant, plaintiff appealed. Affirmed.

*C. A. Nye,* for appellant.

*Charles S. Marden* and *M. R. Tyler,* for respondent.

CANTY, J.

Defendant purchased from one Burrington certain real estate situated in Barnesville on an executory contract of sale; and one Oblinger, an attorney at law of Barnesville, examined the title and drew up the contract for defendant. Defendant then went to Mapes, North Dakota, where he remained some length of time, leaving his wife at his residence at Barnesville. During this time, and on February 24, 1896, Oblinger wrote to defendant, at Mapes, as follows:

"Dear Sir: Do you want to sell the Burrington place for $350, as I have that offer in cash? Please let me know by telegram as soon as this reaches you."

The next day defendant answered by telegram as follows:

"Letter received. Take four hundred and fifty. No less."

On the same day (February 25), defendant wrote Oblinger a letter to the same effect. Oblinger received the telegram on February 25, and on the same day made a written contract with plaintiff, in which he, representing himself to be the agent of defendant, as such agent, in defendant's name agreed to sell the real estate to plaintiff for $500, which sum she agreed to pay therefor, and did then and there pay to Oblinger the sum of $100. Two weeks later she paid him the balance of $400, as and for the purchase price of this real estate. This action was brought to enforce specific performance of this contract. On the trial the court found that Oblinger had no authority to execute the contract as agent of defendant, and ordered judgment for the latter. From an order denying a new trial, plaintiff appeals.

Appellant contends that the evidence is conclusively in her favor. We cannot so hold. The letter and telegram of defendant, above

mentioned, never gave Oblinger any authority to act as the agent of defendant in the sale of this land. Neither did Oblinger have any such authority before, and the court was warranted in finding that defendant has not ratified his acts since.

After Oblinger signed the contract, there was a running correspondence between him and defendant for more than a month. But it does not appear from all this correspondence introduced in evidence that Oblinger ever informed defendant of the nature of the contract, or that the same was made by the former in the name of, and as the agent of, the latter, or that the latter ever knew that fact during all of that time. For all that appears, defendant might well have supposed that Oblinger made the contract in his own name, intending to purchase in his own name from defendant for the purpose of fulfilling the contract. Immediately after signing the contract, Oblinger sent a form of a deed of the property, in which the grantee's name was left blank, with a request that defendant sign, acknowledge, and return the same. Defendant answered that he would withhold his signature from the deed until he learned whether or not his wife was willing to sign it. In a subsequent letter he objected to giving a warranty deed. Oblinger subsequently wrote defendant that his wife would not sign it. A proposition was then made to give a quitclaim deed, but it sufficiently appears from the evidence that the wife would not sign that. A proposition was then made to have the deed run from Burrington direct to plaintiff. The evidence does not disclose very clearly why this proposition was not carried out, except as it may be inferred that by this time defendant had discovered that plaintiff had paid the $500 to Oblinger, and he had converted the sum to his own use, and could neither return it to plaintiff, when she demanded it, or pay it to defendant, if he should see fit to carry out the proposed sale. Defendant had in no manner misled plaintiff, or induced her to pay her money to Oblinger. The evidence shows that, when she inquired of Oblinger if the property was for sale, he answered that he did not know; that he "would submit the proposition to Mr. Nelson, and find out."

In order to make a binding ratification of an unauthorized act done in his name, it is necessary that the party have knowledge

of all the material facts; and, if he does not have such knowledge, he may, on being informed, avoid his ratification and disavow the unauthorized transaction. 1 Am. & Eng. Enc. Law (2d Ed.) 1189, and cases cited. In this case, defendant did not know that Oblinger had received and converted to his own use the $500; and even if defendant had, under these circumstances, ratified the contract of sale, he would not be bound by it. But we see no ground on which the court below was bound to find that he did ratify it at all. The plaintiff is simply the victim of Oblinger.

Order affirmed.